Chittenden, J.
The plaintiff, in the common pleas court, recovered a verdict and judgment against the defendant in the sum of $10,000, because of personal injuries sustained by the plaintiff. The plaintiff, Kenneth Hanaway, who sued by his next friend, was at the time of the accident a minor slightly under three years of age.
On or about the 16th day of June, 1914, he, with some other children, was playing near the corner of Utah and Fassett streets in the city of Toledo. The defendant was operating an electric car upon the tracks of The Toledo Railways & Light Company on Fassett street. At the time in question the car stopped on Fassett street just west of the intersection of Utah street, for the purpose of taking on a passenger. After the car started, and at about the time it crossed the westerly side of Utah street, it is claimed that the plaintiff was struck by the car and after being carried or dragged some distance the wheels ran over his left leg at about the ankle, so crushing the ankle and foot as to necessitate an amputation at about the shoe top.
It is claimed by the plaintiff that while the car was standing at the point where it stopped to take on a passenger, the plaintiff, with some other children, started to go across Fassett street from the north side to the south side thereof, and that they were in plain view of the motorman and conductor, and that when the plaintiff was about sixty feet in front of the car the motorman and conductor, without any notice or warning to the plaintiff who was then crossing Fassett street and about to cross the railway tracks, carelessly and negligently started *101 the car forward, and that while the plaintiff was on the tracks of the railway company in front of the car and in plain view of the motorman and conductor operating the same, the car was so negligently and carelessly operated as to run over the plaintiff’s left foot and leg although there was ample time to stop the car before it struck the plaintiff. Evidence was introduced on the part of the plaintiff tending to prove these allegations.
Several claims of error are made in this court. It is claimed that the court erred in its charge to the jury-upon the subject of the amount of care required of the defendant company, and complaint is especially made as to the following language:
“A street railway company in the operation of its cars is required to exercise a much higher degree of care toward a child who, owing to its immature years is incapable of realizing and appreciating the proximity of danger and the necessity of care and caution to avoid injury, than is required toward an adult whose age, knowledge and experience better enable him to look out for himself. A motorman operating a car on a street where he has reason to expect the presence of children must exercise a high degree of watchfulness and if he sees, or by the exercise of ordinary care could see a child of tender years on or near the track, he is not entitled to act on the assumption that such child will get off or stay off the track, but must • at once use ordinary care to avoid injuring him, and if by the exercise of ordinary care he might have discovered the child in time to have avoided injuring him and fails to do so, the company is liable for the resulting injuries.”
*102 Just previous to using the language above quoted the court had charged the jury that the plaintiff could only recover in case he proved by a preponderance of the evidence the negligence charged in the petition, and the court carefully defined the legal meaning of the term negligence. He had also defined ordinary care at considerable length and with accuracy. He had charged the jury, in substance, that the amount of care that was to be exercised to comply with the definition of ordinary care varied according to the circumstances of particular cases. He had made use of the following language: “The court instructs you that if the necessity of using ordinary care is called into existence under circumstances of particular peril a greater amount of care is required than when the circumstances are less perilous.” Following immediately upon the discussion of this subject he used the language first above quoted. Construing the language first above referred to, in connection with what preceded it in the charge, it is evident that what the judge intended to charge the jury was that where a child of immature years, incapable of realizing and appreciating the proximity of danger, was threatened with injury by an electric railway company, the railway company, in order to discharge its duty of exercising ordinary care, was required to use greater care than in a case where an adult was so threatened. The language of the court in saying that an electric railway company “is required to exercise a much higher .degree of care toward a child” was not an accurate statement. He should have said that an electric railway company, in the exercise of ordi *103 nary care under such circumstances, was required to use more care with reference to a child than toward an adult. The charge, however, could not have misled the jury in view of all that had been said by the court upon the subject of the degree of care required of the defendant. We think that the charge states the law substantially as required under the authority of Cleveland Rolling Mill Company v. Corrigan, 46 Ohio St., 283. The court, on page 291, makes use of the following language:
“The almost universally accepted doctrine is, that the care to be observed to avoid injuries to children, is greater than that in - respect to adults. That course of conduct, which would be ordinary care when applied to persons of mature judgment and discretion, might be gross, and even criminal negligence, toward children of tender years. The same discernment and foresight, in discovering defects and dangers, can not be reasonably expected of them, that older and experienced persons habitually employ; and therefore the greater precaution should be taken, where children are exposed to them.”
It is also claimed that the court erred in charging the jury that “a motorman operating a car on a street where he has reason to expect the presence of children must exercise a high degree of watchfulness and if he sees, or by the exercise of ordinary care could see a child of tender years on or near the track, he is not entitled to act on the assumption that such child will get off or stay off the track, but must at once use ordinary care to avoid injuring him, and if by the exercise of ordinary care he might have discovered the child in *104 time to avoid injuring him and fails to do so, the company is liable for the resulting injuries.” It is claimed that the words “near the track” are so indefinite as not to indicate any definite situation to the jury, and that the child might be said to be near the track if he were at any point in the street. Every charge must be read with reference to the facts in the case under consideration. It is evident that the jury could not have understood this term to mean anything other than that if the child was in close proximity to the track, and we think that the phrase was sufficiently definite in that respect.
This portion of the charge is said to be in conflict with a special instruction given before argument at the request of the defendant, being request number six, in which the jury were instructed that those engaged in the operation of the street car were not required to assume that children on the streets would run suddenly into the path of such car and they were not required to so operate their cars as to be able to stop them instantly if a child should do so. We are unable to find that the general charge contradicts or modifies the special instruction. The special instruction was an abstract proposition of law and was certainly as favorable to the defendant as it could have been made. The word “children” used therein covers a considerable range in age, and it is certainly true that the railway company is not required to stop its cars instantly if a child should suddenly and without warning run in front of the car. With a -child of the age of the plaintiff we think that the motorman is not to infer either, that the child will run in front of the car or run away from the car. At such an age a *105 child is likely to do either one of these things, and a motorman should operate his car with the knowledge that children of that age are not appreciative of the dangers that are threatening them and that they are as likely to act ill-advisedly under such circumstances as otherwise. The jury were instructed that it was the duty of the motorman in case of a child of such tender years being on or near the track, — that is, in close proximity to the track, — to at once use ordinary care to avoid injuring it. We think that the charge in this respect was a correct statement of the law.
There are some other criticisms made upon the general charge, but what we have stated we think sufficiently covers the other objections presented.
The general verdipt was signed by twelve jurors. The defendant requested a special finding of fact and the same was submitted to the jury and was answered by them, the answer being signed by nine only of the twelve jurors. The special finding of fact was as follows:
“Did Kenneth Hanaway get on- the street car track in front of the car and in plain view of the motorman operating said car and so far ahead of the car that the motorman, in the exercise of ordinary care, had time to stop the car before it struck him?” Answer: “Yes.”
The plaintiff in error contends that it was entitled to have this interrogatory answered by the unanimous vote of the jury, and that the court erred in accepting an answer signed by only nine of the twelve jurors. The plaintiff in error claims that an interrogatory of this character .can only be answered by the unanimous action of the jury. *106 Section 11455, General Code, passed in pursuance of the constitutional amendment permitting such legislation, provides that in all civil actions a jury shall render a verdict upon the concurrence of three-fourths of their number. The answering of special interrogatories by the jury is covered by Section 11463, General Code, which provides as follows: “When either party requests it, the court shall instruct the jurors, if they render a general verdict, specially to find upon particular questions of fact, to be stated in writing, and'shall direct a written finding thereon. The verdict and finding must be entered on the journal and filed with the clerk.” The latter section does not by its terms require any given number of jurors to determine the question of fact, nor does it require the answering of the interrogatory unless the jury shall render a general verdict. The provision is that if a general verdict is rendered then the. jury shall make a written finding upon the interrogatories. Thus, it will be seen that the general verdict and the interrogatories were placed upon the same basis and that only when the general verdict was agreed upon were the special interrogatories to be determined. When the constitution and statute required the unanimous vote of the jury to render a general verdict it was no doubt the law that the special interrogatories could only be answered by unanimous vote of the jury. It required the same number to answer the special interrogatories that was required to render the general verdict. When the constitution and statutes were so amended as to permit a verdict by the concurrence of three-fourths of the jury, it would seem to follow from *107 a fair interpretation of Section 11463, that the special interrogatories which were to be answered in case a general verdict was returned might be answered by three-fourths of the jury. Clearly if the jury are entitled under the constitution and laws, as they are, to determine by a three-fourths vote, in a general verdict, all the issues involved, it must follow that they are entitled to determine by a three-fourths vote every particular ultimate fact submitted by an interrogatory.
The answer to this question could not be prejudicial in any event because the interrogatory submitted, if not answered or if answered in the negative, would not necessarily require any different judgment. We think that the pleadings and the evidence did not make it necessary that the jury find that the plaintiff was on the street car track and in front of the car in order to establish a liability upon the part of the defendant.
Misconduct upon the part of the plaintiff is charged, and it is claimed that such misconduct consisted in either the next friend of the plaintiff or his attorneys permitting the plaintiff to be upon the floor, immediately in front of the jury, during the argument of counsel for the plaintiff, walking upon one foot and one knee or upon both knees, and that such conduct upon the part of the plaintiff, so acquiesced in by the next friend of the plaintiff and his counsel, unduly aroused the sympathies of the jury. This alleged misconduct is not made manifest by the bill of exceptions, but was sought to be shown by affidavits of two jurors presented to the trial court upon the hearing of the motion for new trial, which affidavits are attached to the *108 bill of exceptions and constitute all the evidence upon the subject presented to the trial judge. The affidavits contain nothing more than a recital of the fact that they saw the plaintiff move around as above indicated. They do not undertake to state what, if any, effect such action upon the part, of the plaintiff had upon them or the jury generally. It is, of course, apparent that affidavits of jurors can not be received for the purpose of impeaching or explaining their own verdict. It does not appear in the record of the trial that there was such conduct as is set forth in these affidávits, and we hold that under the authority of State v. Young, 77 Ohio St., 529, the question here sought to be raised can not be properly brought into the record by affidavits, as was attempted in this case.
Finally, it is claimed that the verdict is excessive and is not sustained by sufficient evidence. We are not prepared to say that the verdict is excessive in view of the suffering endured by the plaintiff and the fact that he will be deprived of his left foot during his entire lifetime. At the plaintiff’s age, three years, his expectancy of life, according to the Carlisle tables of mortality, was substantially fifty years. At no age is the expectancy of life materially greater than at the age of three years. This is almost the maximum period of expectancy.
The plaintiff presented three witnesses who claimed to have seen the accident. Two of these were employes of the Big Four Railroad Company, one being an engineer and the other his fireman. They were men of experience and appeared to be intelligent and fair witnesses and their evidence is *109 wholly unimpeached. Both testify that when approximately two hundred feet in front of this car they saw it strike the child, and that they immediately ran toward the car-, one of them swinging his cap to indicate, as a railroad man would, a stop signal, and both yelling to attract the attention of the motorman, and both testify that the motorman was looking back toward the rear of the car and not forward, and that they were unable to attract his attention until they were nearly to the car; that during this time the child was under the fender, either holding on or being dragged by reason .of having its clothing caught, and that it was screaming and struggling apparently to escape from its position; that when they had almost reached the car the child had been released from its position and the wheels of the forward truck ran over its left foot. Another witness, a girl about seventeen years of age, in many respects corroborates the testimony of these two witnesses. The only witness on behalf of the railway company who was in position to know much about the facts was the motorman himself, whose evidence is contradictory to that of the three witnesses just mentioned. It is evident that the jury gave little credit to the testimony of the motorman.
We think that the case was fairly tried and that the rights of the'plaintiff in error were at all times fully protected. The charge of the court, both before and after argument, was certainly as favorable to the company as it had the right to expect. A careful examination of the record discloses that there was no error committed during the trial suffi *110 ciently prejudicial to justify a reversal of the judgment, and that the judgment accomplished substantial justice.

Judgment affirmed.

Richards and Kinkade, JJ., concur.