THE DAYTON ARCADE CO. *v.* MILLER.

(Decided February 4, 1931.)

*Messrs. Matthews & Matthews,* for plaintiff in error.

*Mr. Mahlon Gebhart* and *Mr. Robert N. Brumbaugh,* for defendant in error.

ALLREAD, J. The plaintiff in error, the Dayton Arcade Company, defendant below, prosecutes error to the judgment of the court of common pleas. The parties will be referred to as they stood in the court below.

The plaintiff, Bessie M. Miller, brought suit in the court of common pleas for damages caused by negligence. The defendant, the Dayton Arcade Company, owned an apartment building on Fourth street, in the city of Dayton. In this building there was an elevator which opened into a court leading south to Fourth street, and leading north into an arcade, also owned by the defendant, immediately north of the apartments. There were various stalls in the arcade department so arranged as to leave aisles running north and south and east and west. One of the aisles began at the place where the eleva-

tor stood, and ran north through the entire distance to Third street.

When the markets were closed in the evening the janitors began their process of cleaning. This, in the main, consisted of gathering the debris in the east and west aisles and bringing it up to the mouths of the aisles. At no time previous to facts involved here had the plaintiff ever observed any of this debris in the main north and south aisles; but a space was left open there for the passage of people.

The plaintiff lived in an apartment of this building, fronting on Fourth street. She had been in the habit of passing through the arcade north to Third street.

On the day in question Mrs. Miller left her apartment, passed down the elevator, thence through the arcade portion to Third street, and thence to the drug store on the corner. She returned the same way until she reached a portion of the arcade where there was a certain amount of vegetables and debris that had been swept across the opening and onto the path she was pursuing. There she fell and was injured.

There was an answer filed denying negligence and pleading contributory negligence. A reply was filed to so much of the answer as pleaded contributory negligence. Upon these issues the case was submitted to the jury. At the close of plaintiff's evidence a motion was filed for dismissal. This was renewed at the close of all the evidence. Both motions were overruled and the case proceeded to the jury. The jury returned a verdict in favor of the plaintiff for $4,000. A motion for new trial was overruled and a

judgment rendered on the verdict. A petition in error has been filed to this judgment.

A number of questions are raised. The first is that the trial court erred in overruling the motions for a directed verdict upon the ground of contributory negligence. It is claimed that the defendant in error, Mrs. Miller, in the exercise of ordinary care, could have seen the debris, and was guilty of negligence in attempting to pass over the same.

The material part of the testimony of Mrs. Miller on the trial is as follows:

"Q. What was the condition of the passageway where you would walk, to the east of where this was stacked up, on those previous occasions, as to whether some of the debris was out where you walked? A. I never saw it out further than in the mouth of the aisles.

* * *

"A. I came on to come to my home and when I got between Smith's and Kern's there, there was debris in the aisle, and I thought at the time someone could get a terrible fall, and just as the thought came to me I felt my foot go forward on something squashy and I fell and put my arm out this way (indicating) and falling broke my arm.

* * *

"Q. When you saw this situation, what then happened? I wish you would tell that over again. A. Just as I was coming through, I hadn't noticed anything looked dangerous until I came between Smith's and Kern's.

"Q. Let me ask you this. Go back. The first east and west aisleway is between—I may be leading— between O'Brien's and Rudy's stands? A. Yes.

"Q. What was the condition about any debris being there? A. I didn't notice any there at all. That is where the night watchman was sitting.

"Q. And you came on southwardly. Do you know the stalls to the north and south of the next east and west aisleway? A. Let's see. There is Rudy's. I don't know whether Smith's is next to Rudy's or not. I can't remember.

"Q. Do you recall of passing more than this first aisleway before you saw this debris, or had you passed a second one before you saw it? A. I think I had passed the second one. The debris was there, but it was inside. I didn't see anything at all that would cause me to think anything at all.

"Q. When you say inside, where do you mean? A. Just as they would bring it to the end of the passage.

"Q. To the end of the east and west aisleway as distinguished from being spread out over where you were walking? A. Yes.

"Q. When you got down to the next aisleway, describe that condition? A. That is when I saw this debris and I thought to myself, 'Oh, this is terrible. Someone could get a terrible fall,' and the thought was scarcely out of my mind, that is when I went to step and felt something squashy. I remember of slipping, and I tried to catch myself, and fell forward.

"Q. After you saw this squashy stuff on the floor, did you take more than one step before you fell? A. I don't remember that I did. All I remember, I felt myself slipping and trying to catch myself."

On cross-examination Mrs. Miller testified as follows:

"Q. When you got up to Smith's stand, what did you see? A. I saw a pile of debris there, scattered all through the passageway.

"Q. Describe what you saw, the space it covered? A. It looked like someone had taken the debris from the vegetable stands, I remember seeing tomatoes and lettuce,—it looked as though they had given it a swish against the sacks. The whole thing was filled at that one place.

"Q. You say you saw some tomatoes? A. I saw tomatoes. I remember I saw green stuff. I suppose it was probably lettuce and it was debris from the vegetable stands.

"Q. See any celery? A. I can't say it was celery. I couldn't swear. I remember distinctly of the tomatoes and the green stuff which I suppose was lettuce."

This is substantially the testimony of the plaintiff upon this point. The defendant offered certain witnesses to prove the condition of the passageway of the arcade on the night in question.

The question is whether the plaintiff saw the debris on the floor and could by the use of due diligence have known of its dangerous condition before she stepped on the debris and fell. We are of opinion that the evidence does not disclose that she had previously seen any debris over this passageway, and that on the night in question, when she passed through going to the drug store, she did not see anything, but on the way back saw some debris and immediately thought of its danger, and then she fell.

The testimony shows that the passageway was lighted. This was for the purpose of showing her opportunity to see the debris. The daughter came

on after she had fallen and saw the debris, and remarked about its danger. We think this is the doubtful question in the case, and we have considered the authorities with regard to the duties of a pedestrian in looking for danger.

One of the early cases is *Schaefler* v. *City of Sandusky,* 33 Ohio St., 246, 31 Am. Rep., 533. This was a case of ice on the sidewalk. There were answers to the interrogatories which show that the plaintiff voluntarily passed over this obstruction, and that he could have avoided it. It was held by the Supreme Court that the plaintiff's claim of negligence was barred by contributory negligence.

The next case is the *Village of Conneaut* v. *Naef,* 54 Ohio St., 529, 44 N. E., 236, where it was held: "One who goes voluntarily upon an accumulation of ice on a walk of a village cannot maintain an action against such village for a personal injury resulting to him, if the source of danger is plainly visible."

The court decided that the plaintiff could not recover because of contributory negligence.

In the case of *City of Norwalk* v. *Tuttle,* 73 Ohio St., 242, 76 N. E., 617, 618, it was again decided that: "One who voluntarily goes upon a sidewalk of a city which is obviously, and by him known to be, in a dangerous condition, cannot recover on account of injuries which he may thereby sustain, even if the negligence of the city is admitted or shown."

In the later case of *Union News Co.* v. *Freeborn,* 111 Ohio St., 105, 144 N. E., 595, Freeborn was injured in the restaurant of the defendant by slipping and falling, resulting from the use of soapy water on a floor previously oiled. The case went to the jury which returned a verdict for the plaintiff. A judg-

ment was rendered on the verdict. The case came to the Supreme Court, which held that her contributory negligence was a question for the jury, and that it did not conclusively appear that her negligence was the cause of her falling.

In the case of *Cincinnati, Hamilton & Dayton Rd. Co.* v. *Aller*, 64 Ohio St., 183, 60 N. E., 205, it was held that the railroad company was discharged from liability to one who was merely a licensee. The syllabus reads: "A railway company having constructed its station and a platform incident thereto does not, by permitting persons to use such platform for purposes of their own not connected with the transaction of business at such station, become charged with a duty to reconstruct, guard or light such platform so as to render it safe for the permitted use."

In the case of *Harmony Realty Co.* v. *Underwood*, 118 Ohio St., 576, 161 N. E., 924, the trial court allowed a judgment in favor of the plaintiff for personal injuries for negligence of the defendant in the use of its rear entrance. The plaintiff who brought the suit undertook to return to her apartment, stumbled on a pile of loose stone covering the walk at the rear end of the building, and was thrown upon a pile of crushed stone and was injured. The question in this case was whether the trial court should have sustained a motion for a directed verdict, and it was held that the trial court should have directed such verdict. The court recites the testimony tending to show that Mrs. Underwood, the plaintiff in that case, saw the condition and knew the danger.

The still later case of *Highway Construction Co.* v. *Sorna*, decided by the Supreme Court April 16,

1930, is to be found in 122 Ohio State, at page 258, 171 N. E., 312. The syllabus of that case is in part as follows:

"1. One using a sidewalk, crosswalk, street or highway, which ordinary and reasonable care would inform him was dangerous, takes the risk of such injuries as may result to him by open and apparent defects, such as his observation ought to have detected and avoided. * * *

"2. A pedestrian, proceeding with due care as to known defects, who sustains an injury while using a street crossing under course of improvement, the injury being caused not by the known, open and apparent defects, but by a latent, hidden defect in such street crossing, of which he had no knowledge and which could not be detected by him by ordinary and reasonable care, is not guilty of contributory negligence as a matter of law."

The questions involved in the *Sorna case* are similar in many respects to the questions under consideration here. The plaintiff there recovered a judgment in the court of common pleas, which was affirmed by the Court of Appeals of Cuyahoga county, and by the Supreme Court.

Judge Day, in the *Sorna case,* at page 267 of 122 Ohio State, 171 N. E., 312, refers to the case of *City of Toledo* v. *Smith,* 79 Ohio St., 459, 87 N. E., 1133. This is an unreported case, but it affirms the Circuit Court, the decision of which is reported in *Smith* v. *City of Toledo,* 11 C. C. (N. S.), 167, 20 C. D., 454, where the syllabus reads as follows: "A pedestrian must exercise ordinary care both in the selection of a route and in its use after selecting it; but a pedestrian on a city street, desiring to go from one resi-

dence to another on the same side of the street, is not negligent as a matter of law in attempting to pass over a defective sidewalk, where his only alternatives are to take a very circuitous route by another street or to cross through deep mud the street he is on to a more dangerous sidewalk on the other side."

There are two unreported cases decided by this Court of Appeals in Columbus. The case of *Dillman* v. *Karl*, decided on January 21, 1930, was a case where Dillman was a pedestrian on the street and fell by reason of a defect in the street caused by the defendant in attempting to allow the flood water from his building to pass through the sidewalk to the street. This court held that the plaintiff, Louise Dillman, was bound to use ordinary care, and that the defect in the street was not so apparent as to require the court to hold that she was guilty of contributory negligence. She was allowed a recovery. The judgment was affirmed in the Court of Appeals and taken to the Supreme Court on motion for *certiorari,* which was refused.

A still later case is that of *F. W. Woolworth Co.* v. *Saxton, ante,* 118, 177 N. E., 219, decided by this court on the 7th of October, 1930. Mrs. Saxton was a customer at the Woolworth store, and entered the store for the purpose of making a purchase. The floor had been oiled the evening before, and there was a wet spot on the floor at the time Mrs. Saxton entered. When she approached this wet spot, she slipped and fell and was injured. The question of contributory negligence was raised. It was claimed that the plaintiff should, as a matter of law, have looked at the spot where the oil was. It was held by this court that she was not guilty of contributory

negligence as a matter of law, but that the question was one of evidence to go to the jury. This case was also taken to the Supreme Court and a writ of *certiorari* refused.

Under these authorities we are satisfied that, where the question of the plaintiff's contributory negligence is not clear or conclusive, a question of fact arises, and the case must go to the jury. There is evidence in the case now before us tending to prove that the injured person was an invitee. This fact would strengthen the claim of plaintiff that she was not negligent.

The *Sorna case* also holds that, as between two routes, plaintiff had a right to make an election, and there is nothing in the case here that would hold the plaintiff to the duty of passing around the sidewalk from Fourth street instead of going through the Arcade. See the case of *City of Cincinnati* v. *Green,* 9 Ohio Law Abs., 213, 34 O. L. R., 24.

We therefore hold that there was no error in overruling the motions for a directed verdict. We also hold that the trial court was right in allowing the evidence as to the nervous condition of the plaintiff after the witness had testified that such nervous condition was an incident to the fall.

The plaintiff in error complains of various paragraphs in the charge of the trial court, among others the following: "The negligence, therefore, if any, of the agents and servants of the defendant corporation acting within the scope of authority conferred upon them by the defendant corporation, is the act of the corporation itself, for which it must answer."

We think, however, taking the charge as a whole, there is no valid objection to the charge. The law as to contributory negligence of the plaintiff was

submitted to the jury. The charge must be taken as a whole, and the case will not be reversed because there is a technical error in a part of the charge.

There is also an objection to the charge upon the question of an invitee. It is claimed that there was evidence from which the jury might have found that the plaintiff was an invitee, and other evidence from which it might have found that she was a mere licensee. That there is a difference between the obligations of the owner of the property upon the two questions we do not doubt. There was, however, enough evidence to justify a court in giving special charges on the subject of an invitee, and this we think the court did, and we find no objections thereto.

Again it is urged that the latter portion of the charge does not state clearly the duty of the plaintiff to use due care and the right of the defendant in the court below to insist that, if she did not use due care, the defendant in the court below was entitled to a verdict. The trial court, in the clause immediately preceding this clause, had charged the jury that it was the duty of defendant to use ordinary care in favor of his invitee, and that the defendant is not an insurer for the safety of its invitee, and then follows this particular charge, which we think was proper. We find no error in the general charge.

The next question is as to the amount of the verdict. We have carefully read the evidence, and, while we are not free from doubt as to whether the verdict is or is not excessive, we finally reach the conclusion that a verdict of $4,000 is not so manifestly excessive as to justify this court in reversing the same.

*Judgment affirmed.*

KUNKLE, P. J., and HORNBECK, J., concur.