**MARINE PETROLEUM COMPANY,**
**Appellant,**

v.

**CHAMPLIN PETROLEUM**
**COMPANY et al.**

**No. 77–1345.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 14, 1978.

Decided April 12, 1979.

Rehearing Denied May 30, 1980.

---

Daniel Joseph, Washington, D. C., with whom Laurence J. Hoffman and Michael J. Madigan, Washington, D. C., were on brief, for appellant.

Richmond C. Coburn, St. Louis, Mo., of the bar of the Supreme Court of Missouri, pro hac vice by special leave of Court, with whom Donald B. Craven, Washington, D. C., was on brief, for appellee.

Before ROBINSON, MacKINNON and ROBB, Circuit Judges.

Opinion for the Court filed by SPOTTSWOOD W. ROBINSON, III, Circuit Judge.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Marine Petroleum Company, a marketer of motor gasoline, sued Champlin Petroleum Company, a producer and refiner, in the Eastern District of Missouri for alleged violation of federal price regulations. During the pendency of the action, Marine sought an order from the District Court for the District of Columbia compelling Charles R. Owens, Champlin's independent consultant on energy matters, to answer questions propounded to him during the course of a deposition at Champlin's instance. In reliance upon Federal Civil Rule 26(b)(4)(B),[1] Champlin opposed the inquiry, asserting that Owens was an expert retained in anticipation of litigation, that he would not be called as a trial witness, and that resultantly he was not deposable on matters within the purview of his engagement by Champlin.

██ The District Court ruled that Marine could have orthodox discovery of facts known or opinions held by Owens prior to the time at which he began to devote his talents to the litigation precipitated by Marine, but not with respect to information developed thereafter.[2] Marine now appeals from this limitation on a deposition from Owens.[3] We affirm.

I

In March, 1975, Marine filed with the Federal Energy Administration (FEA) a complaint against Champlin and its parent company, Union Pacific Corporation, charging violations of petroleum price regula-

---

1. Fed.R.Civ.P. 26(b)(4)(B), quoted infra note 11.

2. Marine Petroleum Co. v. Champlin Petroleum Co., Misc. No. 77–0002 (D.D.C. Feb. 22, 1977) (unreported), Appellant's Appendix (App.) 126–127.

3. An application for an order compelling answers by a nonparty deponent must be made to the court in the district wherein the deposition is being taken. Fed.R.Civ.P. 37(a)(1). While a discovery order is normally interlocutory, e. g., English v. Cunningham, 108 U.S.App.D.C. 356, 282 F.2d 839 (1960), the order under review is appealable by Marine. Since the proceeding is

independent of the main action, and has for its sole purpose the acquisition of information from a nonparty, an order denying discovery frustrates that effort, and appellate review thereof is of dubious value unless conducted at that point. Appealability in this milieu is accordingly recognized. Westinghouse Elec. Corp. v. City of Burlington, 122 U.S.App.D.C. 65, 68–69, 351 F.2d 762, 765–766 (1965); Horizons Titanium Corp. v. Norton Co., 290 F.2d 421, 423–424 (1st Cir. 1961); Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 554–555 (2d Cir. 1967); Premium Serv. Corp. v. Sperry & Hutchinson Co., 511 F.2d 225, 227–229 (9th Cir. 1975).

tions[4] in sales of gasoline to Marine. In October of that year, Marine sued Champlin for damages in the District Court for the Eastern District of Missouri.[5] In the process of discovery, Marine propounded interrogatories to Champlin, one inquiring whether Champlin had ever procured the services of a consultant to facilitate compliance with FEA regulations. In response, Champlin disclosed that Owens had been retained to furnish reports and forecasts of changes in energy policy of interest to the energy industry generally and, upon occasion, economic analyses of interest to Champlin.

Marine subsequently deposed Owens in the District of Columbia. At the deposition session, objection was interposed to any and all questions relating to Owens' activities in Champlin's behalf. The contention was that Owens had been hired not only in the capacity mentioned but also in expectation of litigation over Champlin's observance of FEA regulations. It was further represented that Owens had from time to time conferred with Champlin's attorneys on that very subject, and on matters highly relevant to Marine's lawsuit. On this ground, and on advice of counsel, Owens refused to answer questions pertaining to his work for Champlin, or to produce any documents save those bearing on his initial hiring by Champlin.

Marine applied to the District Court for the District of Columbia for an order compelling discovery, and there the basic features of Owens' relationship with Champlin came to light. Owens' professional connection with Champlin began in the fall of 1974, when Champlin engaged his consulting firm. The firm obligated itself to follow events and analyze changing conditions impacting Champlin's interest and upon request to provide insights helpful to its planning and decisionmaking processes.[6] The parties settled on a monthly retainer for routine service and a guaranty of the firm's availability on a minimum of two and one-half days per month for special assignments, and to a schedule of additional fees for work done by particular firm personnel on days dedicated to Champlin.[7]

For the first ten months, the relationship continued along these lines. Later, on July 7, 1975, however, after Champlin had received an "issue letter" from FEA informing it that it might be in violation of the petroleum price regulations as Marine had charged, Champlin decided to expand Owens' responsibilities to include assistance in regard to that matter.[8] For sometime onward, then, Owens wore two hats—that of a general consultant and that of an expert engaged in preparation for litigation.[9]

The District Court allowed inquiry into facts known and opinions held by Owens prior to his assignment to the Marine litigation, but barred interrogation of Owens on Champlin-related subjects beyond that point.[10] Marine appealed this partial denial of its discovery request. Prior to oral argument before this court, Marine further deposed Owens to the extent permitted by the District Court's order and now seeks to explore Owens' post-assignment knowledge. Our review of the District Court's action is of course limited correspondingly.

## II

Discovery into facts possessed and opinions entertained by an adversary's expert is

---

4. 10 C.F.R. §§ 212.81–212.89 (1978).

5. *Marine Petroleum Co. v. Champlin Petroleum Co.*, Civ.No. 75–974C(1) (E.D.Mo.).

6. App. 106–107.

7. App. 107, 109.

8. Four months thereafter, FEA issued to Champlin a notice of probable violation of petroleum price regulations.

9. See note 51 *infra.*

10. The District Court initially denied, in its entirety, Marine's motion for discovery-compelling. *Marine Petroleum Co. v. Champlin Petroleum Co.*, Misc. No. 77–0002 (D.D.C. Jan. 28, 1977) (unreported), App. 114–115. On Marine's motion for reconsideration, the court vacated that action and entered the order described in text. *Marine Petroleum Co. v. Champlin Petroleum Co., supra* note 2.

now regulated by the Federal Rules of Civil Procedure. The governing principles are set forth in Rule 26(b)(4),[11] a product of comprehensive revision and reorganization of the discovery process in 1970,[12] and the climax of an era of judicial disagreement and changing sentiment.[13] It is useful at the outset to briefly outline the current scheme of federal civil discovery as a part of the backdrop against which the claims in suit must be assessed.[14]

Rule 26(b)(4) is in terms confined in operation to quests for "facts known and opinions held by experts, . . . acquired or developed in anticipation of litigation or for trial."[15] Thus, one who, though an expert, derives his information simply as "an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit . . . should be treated as an ordinary witness."[16] Rule 26(b)(4) does, however, apply full force to "discovery of information . . . obtained by a party from an expert retained by that party in relation to litigation or obtained by the expert and not yet transmitted to the party."[17] Subject to this limitation, as even the barest inspection will disclose, the rule "deals separately with those experts whom the party expects to call as trial witnesses and with those experts who have been retained or specially employed by the party who are not expected to be witnesses."[18]

Experts within the first category are embraced by Rule 26(b)(4)(A). It specifies that "[a] party may through interroga-

11. In relevant part Fed.R.Civ.P. 26(b)(4) provides:

> (4) *Trial Preparation: Experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
>
> (A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate.
>
> (B) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means. . . .

Rule 26(b)(1), referred to in Rule 26(b)(4), reads:

> (b) Scope of Discovery. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
>
> (1) *In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Rule 35(b), referred to in Rule 26(b)(4)(B), relates only to physicians' reports on physical and mental examinations authorized by Rule 37(a).

12. See 4. J. Moore, Federal Practice, ¶¶ 26.00–26.03 (1976); C. Wright & A. Miller, Federal Practice, §§ 2002–2003 (1970).

13. See 4 J. Moore, Federal Practice, ¶ 27.66[1] (1976); C. Wright & A. Miller, § 2029 (1970).

14. As indicated in text, this will be a greatly capsulized summary for background purposes, with no attempt at comprehensive treatment.

15. See note 11 *supra.*

16. Advisory Committee Note to Rule 26(b)(4), ¶ 1. See *In re Brown Co. Sec. Litigation,* 54 F.R.D. 384 (E.D.La.1972); *Duke Gardens Foundation, Inc. v. Universal Restoration, Inc.,* 52 F.R.D. 365 (S.D.N.Y.1971); *Grinnell Corp. v. Hackett,* 70 F.R.D. 326 (D.R.I.1976). See also note 47 *infra.*

17. Advisory Committee Note, *supra* note 16, ¶ 1.

18. Advisory Committee Note, *supra* note 16, ¶ 1.

tories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion."[19] A litigant is thus entitled automatically and without prior judicial approval to substantial though not complete discovery from the expert who expectably will be used at trial. And, "[u]pon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions[20] . . . concerning fees and expenses as the court may deem appropriate."[21]

Experts who are not prospective trial witnesses are treated very differently, however. The relevant provision is Rule 26(b)(4)(B):

> A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b)[22] or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means. . . .[23]

As is apparent, Rule 26(b)(4)(B) imposes a partial though not a total ban on fact- or opinion-discovery from a nontestifying expert. It eschews a policy of categorical inaccessibility to such information in favor of a carefully circumscribed opportunity for discovery. To invoke its protection, the ex-

pert must have "been retained or specially employed by another party in anticipation of litigation or preparation for trial,"[24] and the data sought to be discovered must have been "acquired or developed in anticipation of litigation or for trial."[25] Even if the involved material is of that nature, the party desiring discovery may still be able to pierce the shield of immunity. This feat is accomplished by establishing "exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."[26]

Rule 26(b)(4)(B), however, "is concerned only with experts retained or specially consulted in relation to trial preparation." It thus "precludes discovery against experts who were informally consulted in preparation for trial, but not retained or specially employed. As an ancillary procedure, a party may on a proper showing require the other party to name experts retained or specially employed, but not those informally consulted."[27]

Such, then, is the general scheme of discovery from experts. Two additional considerations should be noted. One is the precondition, obtaining with respect to both testifying and nontestifying experts, that the material sought be "otherwise discoverable under the provisions of" Rule 26(b)(1).[28] The other is that a litigant who succeeds in securing discovery from an expert does not necessarily get a free financial ride. Save only with respect to experts regularly employed by his adversary and to discovery accomplished by interrogatories, the court is empowered to require payment or sharing of the fees and expenses incidental to the expert's services.[29]

---

**19.** See note 11 *supra.* See also *Knighton v. Villian & Fassio e Campagnia Internazionale,* 39 F.R.D. 11, 13–14 (D.Md.1965).

**20.** Pursuant to Fed.R.Civ.P. 26(b)(4)(C).

**21.** See note 11 *supra.*

**22.** See note 11 *supra.*

**23.** See note 11 *supra.*

**24.** See text *supra* at note 23.

**25.** See text *supra* at note 23.

**26.** See text *supra* at note 23.

**27.** Advisory Committee Note, *supra* note 16, ¶ 9. See *Baki v. B. F. Diamond Constr. Co.,* 71 F.R.D. 179, 182 (D.Md.1976); *Nemetz v. Aye,* 63 F.R.D. 66, 68 (W.D.Pa.1974).

**28.** See note 11 *supra.*

**29.** Fed.R.Civ.P. 26(b)(4)(C).

### III

In the order complained of, the District Court found that "Owens was specially employed by . . . Champlin . . . as an expert in anticipation of litigation on or about July 7, 1975," [30] that Champlin did not intend to call Owens as a witness in the Missouri action,[31] and "that no exceptional circumstances . . . under which it is impracticable for [Marine] to obtain facts and opinions on the same subject by other means have been shown." [32] Accordingly, the court held that Marine "may discover facts known or opinions held by . . . Owens prior to his special employment as an expert in anticipation of litigation that are relevant to the subject matter of this lawsuit and not otherwise privileged." [33] Beyond that, however, Marine's discovery motion was denied.[34]

■ Marine does not contest the District Court's finding that Owens will not be used as a witness in the main litigation but, in a three-pronged attack, it does challenge the court's determinations in all other respects. Our review authority, of course, is quite limited. Trial courts have a broad discretion in discovery matters and appellate courts will reverse only for abuse [35]—for "action which is arbitrary, fanciful, or clear-ly unreasonable." [36] This standard applies equally to discovery sought in a proceeding ancillary to the principal action,[37] and by our appraisal of the record Marine does not survive it.[38]

■ One of Marine's contentions is that the record does not support the holding that Owens was retained as an expert in anticipation of litigation. As Marine correctly observes, from September, 1974, to July, 1975, Owens was a general energy advisor rather than a litigational expert for Champlin, but the District Court had ample warrant for the conclusion that there came a time when the relationship changed radically. An uncontroverted affidavit by Champlin's general counsel avows that (a) at a meeting of legal and other representatives of Champlin on July 7, 1975—after Marine's FEA complaint and FEA's issue letter—the suggestion was made "that Champlin employ specially . . . Owens . . . pursuant to Champlin's contract with that firm . . . as an expert in Federal Energy Administration regulatory matters to assist Champlin in anticipation of the litigation which Champlin then faced and to aid Champlin in its preparation for the trial of said litigation;" [39] that "Owens agreed to

---

**30.** *Marine Petroleum Co. v. Champlin Petroleum Co., supra* note 2, App. 126.

**31.** *Id.,* App. 126.

**32.** *Id.,* App. 126.

**33.** *Id.,* App. 127.

**34.** *Id.,* App. 127.

**35.** *Carter v. Baltimore & O. R.R.,* 80 U.S.App. D.C. 257, 259, 152 F.2d 129, 131 (1945); *Imperial Ethiopian Gov't v. Baruch-Foster Corp.,* 535 F.2d 334, 337 n.8 (5th Cir. 1976); *Greyhound Lines, Inc. v. Miller,* 402 F.2d 134, 144 (8th Cir. 1968); *Data Disc, Inc. v. Systems Technology Assocs.,* 557 F.2d 1280, 1285 n.1 (9th Cir. 1977).

**36.** *United States v. McWilliams,* 82 U.S.App. D.C. 259, 261, 163 F.2d 695, 697 (1947). Compare *Roebling v. Anderson,* 103 U.S.App.D.C. 237, 241, 257 F.2d 615, 619 (1958), *cert. denied,* 366 U.S. 918, 81 S.Ct. 1095, 6 L.Ed.2d 241 (1961); *Carter v. Baltimore & O. R.R., supra* note 35, 80 U.S.App.D.C. at 259, 152 F.2d at

131; *Premium Serv. Corp. v. Sperry & Hutchinson Co., supra* note 3, 511 F.2d at 229.

**37.** *Baker v. F & F Investment,* 470 F.2d 778, 781 (2d Cir. 1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973).

**38.** We need not consider whether the factual determinations articulated in the order under review summon the "clearly erroneous" rule prescribed by Fed.R.Civ.P. 52(a). See *Horizons Titanium Corp. v. Norton Co., supra* note 3, 290 F.2d at 424. Cf. *King v. Wall & Beavers St. Corp.,* 79 U.S.App.D.C. 234, 238, 145 F.2d 377, 381 (1944) (decided prior to the 1946 amendment of Rule 52(a) providing that findings of fact are unnecessary on decisions of Rule 12 motions); 5A J. Moore, Federal Practice, ¶ 52.-08 at 2738–2739 (1977). In our view, the District Court's action must be sustained upon application either of the Rule 52(a) test or the abuse-of-discretion standard which we utilize in the case at bar.

**39.** App. 131.

represent and work with Champlin in connection with that litigation;"[40] and that "[t]hereafter, . . . Owens was consulted on a number of occasions with reference to the litigation by the attorneys for the company and drafts of instruments prepared by the company attorneys were submitted to . . . Owens for his advice and comments."[41]

Nonetheless, Marine asserts that not even the altered and expanded responsibilities thus assumed by Owens brought him within the ambit of Rule 26(b)(4)(B). Marine points out that FEA did not issue a notice of possible violation until October 21, 1975, and that Marine did not file its lawsuit until seven days later, and on that basis Marine questions whether any litigation was extant when Owens took on his new duties. We are satisfied, however, that with Marine's complaint filed with FEA and the agency's issue letter in hand, enough of a foreboding nature had transpired by that time to support the District Court's determination that Owens had been "specially employed by . . . Champlin . . . as an expert in *anticipation* of litigation . . .,"[42] and the rule demands no more.[43]

 Marine also argues that notwithstanding Owens' activities in that character, he remained Champlin's general consultant and advisor on energy problems. It has aptly been held, however, that one may simultaneously be a litigational expert with Rule 26(b)(4) protection as to some matters and simply an unprotected actor or witness as to others,[44] and at the very least the District Court was at liberty to subscribe to that principle. And to the extent that Owens, merely as a general consultant prior to his assignment to the Missouri litigation, may somehow have derived information bearing on the issues therein, the District Court's order leaves Marine free within normal limits to discover it.[45] The truth of the matter, however, is that the record before us does not support any notion that Owens was in position to learn anything about Champlin's activities or motivations in price-setting merely in the capacity of general consultant. As portrayed by the record, the general consulting function consisted simply in a supply of information; a special engagement at a much higher cost was essential before the services of Owens' firm became available for special projects. Indeed, had Champlin's need for advice on its problems with Marine been already accommodated by Owens' general-consulting responsibilities, there would have been no occasion for the special assignment and the payment of the extra fees which the record undisputedly reveals.[46] In sum, Champlin brought forth enough to indicate prima facie that Owens knew nothing helpful to Marine until the special assignment, nor thereafter except in the role for which he was specially retained.[47] We perceive no basis for an assumption that there was more to the situation than that.

 Rule 26(b)(4)(B) implicitly recognizes that a party might well be deterred from thorough preparation of his case were

---

**40.** App. 131–132.

**41.** App. 132.

**42.** See text *supra* at note 30 (emphasis supplied).

**43.** See text *supra* at note 23.

**44.** *Seiffer v. Topsy's Int'l, Inc.,* 69 F.R.D. 69, 72–73 & n.3 (D.Kan.1975); *Inspiration Consol. Copper Co. v. Lumbermans Mut. Cas. Co.,* 60 F.R.D. 205, 210 (S.D.N.Y.1973); Graham, *Discovery of Experts Under Rule 26(b)(4) of the Federal Rules of Civil Procedure: Part One, An Analytical Study,* 1976 U.Ill.L.F. 895, 941–943.

**45.** See text *supra* at note 33.

**46.** App. 131–132.

**47.** Ordinarily an expert assisting in preparation for litigation naturally will gain some degree of insight into his employer's past and present activities, and may well form impressions of his own. He may even personally observe some ongoing activities. But information of this sort clearly is acquired in the process of preparation, and thus is within the ambit of Rule 26(b)(4)(B). To say that such an expert has thereby become an actor or viewer with respect thereto is to emasculate the rule.

it possible for his opponent to freely discover information from a hired expert whose assistance is important but not yet so vital as to require his testimony at trial.[48] The rule's tacit acknowledgement of the necessity of meticulous preparation has equal force whether the expert is one originally and exclusively retained for anticipated litigation or one whose employment responsibilities are expanded to encompass consultation and advice in expectation of litigation.[49] Marine's FEA complaint had alleged noncompliance with the pricing regulations, albeit on but one theory, and FEA had sent an issue letter to Champlin. Ordinary prudence would suggest that Champlin call upon Owens' expertise to arm itself not only for an incipient administrative investigation but also for a possible lawsuit charging pricing violations on any theory at all,[50] and to give Owens the information he needed for the task. The District Court did not exceed the bounds of its discretion in adhering fully to the protective policy of Rule 26(b)(4)(B) when concluding that the intelligence Owens acquired to that end came in preparation anticipatory of litigation, and in disdaining Marine's unsupported assumption that Owens derived some of it in some other character.[51]

Marine's final contention is that in any event there are "exceptional circumstances under which it is impracticable for [it] to obtain facts or opinions on the same subject by other means." [52] Marine is endeavoring particularly to accumulate evidence of wilful transgressions of the price regulations by Champlin, and thereby to recover treble damages.[53] Marine represents, and Champlin does not deny, that in answer to interrogatories inquiring as to the identity of persons involved in its pricing determinations, Champlin supplied the names of two lay employees who later disclaimed participation therein and the names of two of its lawyers who subsequently invoked the attorney-client privilege. Because of assertions of that and other privileges, Marine states, it was unable to obtain information by deposing another Champlin executive.[54] So, Marine says, only through Owens can it gain access to data it desperately needs.

Were the situation as imperative as Marine urges, the District Court's omission of express leave to pursue discovery from Owens on developments postdating his tenure as a litigational expert would give us con-

---

**48.** Note, Proposed 1967 Amendments to the Federal Discovery Rules, 68 Col.L.Rev. 271, 282 (1968). See also 8 C. Wright & A. Miller, Federal Practice, § 2033 at 256 (1970).

**49.** In holding that an in-house expert may be specially assigned by his employer to anticipated litigation, the court in *Seiffer v. Topsy's Int'l, Inc., supra* note 44, 69 F.R.D. at 72, observed:

The policy behind the rule reflects the considered judgment that an expert specially employed by a party in anticipation of litigation may not be examined as freely as a person not occupying that special category. While facts are not to be hidden, nor necessary discovery improperly obstructed, neither is a party allowed to delve at will into an expert mind solely to sustain its own burden of preparing for litigation.

**50.** Indeed, as Champlin divined, Marine did institute suit and, as Marine itself states, the claims asserted in the suit are far broader than its administrative complaint. Brief for Appellant at 21 n.16.

**51.** We are mindful that on May 12, 1976, Champlin revised the arrangement with Owens to limit future service simply to a subscription to his firm's weekly newsletter at a greatly reduced monthly retainer. App. 112–113. With nothing whatever to indicate the contrary, it is well-nigh inconceivable that service of that sort could have left Owens in a position to acquire anything of importance to the litigation.

**52.** See text *supra* at note 23.

**53.** See Economic Stabilization Act of 1970, § 210(b)(1) as amended, 12 U.S.C. § 1904 note (1976).

**54.** Marine informs us that this witness identified more than 40 documents which appeared to be responsive to Marine's effort, but on grounds of privilege refused to produce any at all. A listing of the documents in the record discloses claims by Champlin of the attorney-client privilege, the work product rule, and the protection of Rule 26(b)(4)(B). App. 118–125.

siderable pause.[55] As it stands, however, we share the District Court's view that Marine did not carry its burden of demonstrating the exceptional circumstances that Rule 26(b)(4)(B) contemplates. We might observe initially that this court has already afforded Marine an opportunity to solicit and submit a finding by the District Court for the Eastern District of Missouri that it is "impracticable for [Marine] to obtain facts or opinions on the same subject by other means,"[56] and that there has been no response to that invitation. We note, too, the absence of any advice from Marine as to whether it has attempted to test in court the privileges invoked by Champlin officials and if so the degree of success or failure it has encountered.[57]

More fundamentally, we think Marine's approach to a solution to its assumed dilemma proceeds in the wrong direction. There is no rule or principle restricting access to facts possessed by Owens to discovery from Owens alone. As we read Rule 26(b)(4)(B), factual information, even when acquired in expectation of litigation, is shielded only if discovery is attempted from the expert, and not at all if the effort is to obtain it from a party or another sharing it. As one of the foremost authorities in the field has stated, "[o]bviously facts given by the party to the expert can no more be protected by that fact than facts given to counsel by a party can be brought within the attorney-client privilege. The same should be true of facts known to a party through the expert."[58] The rule "precludes obtention of the information from the expert himself, and it precludes the identification of the facts or opinions as the work of the expert. It does not, it is submitted, excuse the party from disgorging what facts he may have in his possession. . . ."[59] Marine has and long has had the opportunity to secure from Champlin officials the full panoply of facts discoverable,[60] and the corresponding opportunity to employ its own experts to formulate opinions thereon. In these circumstances, we cannot say that the District Court erred in treating Marine's situation as not exceptional.[61]

On the record before us, we sustain the District Court's holding that once Owens was engaged to aid Champlin in the forthcoming litigation, his information and opinions thereafter were acquired and developed as an expert assisting in preparation therefor. We sustain, too, the court's ruling that Marine did not meet the standard of exceptional circumstances which would nonetheless have entitled it to discovery from Owens. It follows that the order appealed from must be

*Affirmed.*

---

55. Compare *Pearl Brewing Co. v. Jos. Schlitz Brewing Co.*, 415 F.Supp. 1122, 1138–1139 (S.D.Tex.1976). See *Sanford Constr. Co. v. Kaiser Aluminum & Chem. Sales, Inc.*, 45 F.R.D. 465, 466 (E.D.Ky.1968); *Walsh v. Reynolds Metals Co.*, 15 F.R.D. 376, 378 (D.N.J. 1954); *Colden v. R. J. Schofield Motors*, 14 F.R.D. 521 (N.D.Ohio 1952), which were decided prior to the 1970 amendment of Rule 26(b)(4)(B).

56. Almost eight months prior to oral argument in this court, we deferred action on Marine's motion to accelerate the argument date pending receipt of a finding of the type described in text. *Marine Petroleum Co. v. Champlin Petroleum Co.*, No. 77–1345 (D.C.Cir: June 23, 1977).

57. See text *supra* following note 53 and note 51 *supra*.

58. 4 J. Moore, Federal Practice, ¶ 26.66[2] at 26–481 (1976) (footnotes omitted).

59. *Id.* at 26–481 to 26–482.

60. We are not impressed by Marine's claim of inability to ∘procure such information from Champlin officials. Given the range of discovery methodology and the enforcement powers of the court, we can attribute its lack of success only to faulty technique.

61. Compare *Bailey v. Meister Brau, Inc.*, 57 F.R.D. 11, 13–14 (N.D.Ill.1972); *Inspirational Consol. Copper Co. v. Lumbermans Mut. Cas. Co.*, *supra* note 44, 60 F.R.D. at 210. See generally Annot., 33 A.L.R.Fed. 457 (1977).

ORDER

PER CURIAM.

Upon consideration of appellant's petition for rehearing, and the Court having reviewed the supplemental material added to the record on appeal, it is

ORDERED, by the Court, that appellant's petition for rehearing is denied for the reasons set forth in the opinion for the Court filed herein this date.

Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

## OPINION ON PETITION FOR REHEARING

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Marine Petroleum Company petitions for rehearing of our decision sustaining the District Court's limitation on the scope of discovery obtainable from Charles R. Owens, Champlin Petroleum Company's consultant on energy matters.[1] We found that the record adequately supported the central premise that Owens was an expert retained by Champlin in anticipation of litigation but one who would not be called as a witness.[2] We held that Federal Civil Rule 26(b)(4)(B)[3] proscribed inquiry by Marine into facts acquired or opinions formulated by Owens while functioning in that role.[4]

Our ruling left Marine free to depose Owens on his knowledge and views prior to July 7, 1975, when his engagement as Champlin's litigation expert began, but barred any probe into information developed by Owens thereafter.[5]

Our analysis of the record, as it then stood, led us to conclude during the decisional process that Marine had not met the specification of Rule 26(b)(4)(B) preconditioning discovery from a nontestifying litigation expert on "a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means ...."[6] Marine expressly confines its petition for rehearing to this single facet of our decision,[7] and refers us to discovery rulings, not heretofore brought to our attention,[8] in the principal litigation pending in the District, Court for the Eastern District of Missouri,[9] where Marine has endeavored strenuously but quite unsuccessfully to obtain what quite accurately it denominates "Owens related documents and testimony."[10]

From subpoenas duces tecum demanding production, by Marine's description, of "all communications by and between Owens and Champlin employees,"[11] Marine has gained only limited access to those dated after July 7, 1975, because of consistent rulings that the great majority are protected at least by

---

1. *Marine Petroleum Co. v. Champlin Petroleum Co.*, No. 77–1345 (D.C.Cir. Apr. 12, 1979) [hereinafter cited Opinion (Op.)].

2. Op., text at ns. 30–51 and ns. 47, 49, 51.

3. Fed.R.Civ.P. 26(b)(4)(B), quoted in relevant part in Op., text at n.23.

4. Op., pt. III.

5. *Id.*, pts. II, III. Owens had previously been retained by Champlin in a different capacity. *Id.*, text at ns. 6–9.

6. Fed.R.Civ.P. 26(b)(4)(B).

7. Marine advises that it "does not seek rehearing with respect to this Court's ruling that Owens was specially employed by Champlin as an expert retained in anticipation of litigation and was not without the ambit of Rule 26(b)(4)(B), as an actor or viewer." Appellant's Petition for Rehearing at 1 n.1. "The sole thrust of the instant petition" Marine continues, is "directed to this Court's ruling that 'exceptional circumstances under which it is impracticable for [Marine] to obtain facts or opinions on the same subject by other means' do not exist." *Id.*

8. Subsequent to announcement of our decision, Marine has filed three motions to supplement the record on appeal with copies of pleadings and orders in the record in the principal litigation. We have granted these motions.

9. *Marine Petroleum Co. v. Champlin Petroleum Co.*, No. 75–974C(1) (E.D.Mo.) [hereinafter cited Main Action].

10. Appellant's Petition for Rehearing at 2.

11. *Id.*

the attorney–client privilege,[12] the work product rule [13] or some combination of both.[14] Marine's efforts to depose five of Champlin's personnel, though somewhat more fruitful, have fallen short of Marine's objectives, for while these witnesses have been ordered "to testify and answer questions regarding meetings held at Champlin in 1973, wherein Champlin made its decision on classification of purchases and formulation of prices," [15] the court has held that "[a]ny statements . . . made by a non–lawyer to a lawyer, or statements by a lawyer to a non–lawyer, are privileged as attorney–client communications, and, as such, are . . . protected from disclosure." [16] On this basis, Marine contends that the exceptional circumstances envisioned by Rule 26(b)(4)(B) have now been demonstrated.

In our earlier opinion, we expressed the view that "Marine's approach to a solution to its assumed dilemma proceeds in the wrong direction." [17] In explanation, we noted that "[t]here is no rule or principle restricting access to facts possessed by Owens to discovery from Owens alone," [18] and that "Marine has and long has had the opportunity to secure from Champlin officials the full panoply of facts discoverable, and the corresponding opportunity to employ its own experts to formulate opinions thereon." [19] The record excerpts from the main action on which Marine relies serve to emphasize that once again Marine has missed the vital point.

██ The exceptional circumstances of which Rule 26(b)(4)(B) speaks are those "under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." [20] The "subject referred to is not Owens' testimony itself; [21] rather, it is the group of topics upon which Marine would have Owens testify–here, alleged price violations in petroleum sales by Champlin to Marine, and particularly the assertedly wilful nature thereof.[22] Whatever might be said for Marine's claim of inability to approximate Owens' personal versions through others, marine has yet to establish that it cannot "obtain facts or opinions on" those points "by other means." [23] As so

12. See generally 2 J. Weinstein, Evidence ¶ 503[01] et seq. (1979).

13. See generally C. Wright & A. Miller, Federal Practice §§ 2021–2028 (1970).

14. Main Action (memoranda and orders of Apr. 28, 1978; June 26, 1978; Aug. 9, 1979). As Marine notes, the court stated in a memorandum issued concomitantly with the order of August 9, 1979, that "[t]he documents labeled 'protected' (P) are exempt from discovery because privileged as attorney–client communications, lawyers' work product, *or the pre–trial opinions of experts*" (at 3) (emphasis supplied). The latter ground is not further discussed therein, or in memoranda accompanying the two earlier orders, although the implications of the attorney–client privilege and the work product rule for document discovery were delineated. We fail to see how these revelations assist Marine here. Our appellate authority extends, of course, only to the action of the District Court for the District of Columbia–an auxiliary forum for a limited proceeding in aid of the main action, with a function no broader than issuance, supervision and enforcement of the subpoena summoning Owens to depose. The fact pertinent to the issues before us is the broad denial of document production, and not the reasons therefor.

15. Main Action (order of May 12, 1978 at 1).

16. *Id.*

17. Op., text following n.57.

18. *Id.*

19. Op., text at n.60 (footnote omitted).

20. Fed.R.Civ.P. 26(b)(4)(B).

21. To read the rule otherwise would be to emasculate it, since obviously the expert's testimony–by that construction, the "subject"–could be rendered only by the expert himself.

22. Op., text at n.53.

23. Fed.R.Civ.P. 26(b)(4)(B). In our prior opinion we stated that "[w]e [were] not impressed by Marine's claim of inability to procure such information from Champlin officials," *id.* at n.60; "[g]iven the range of discovery methodology and the enforcement powers of the court," we added, "we can attribute its lack of success only to faulty technique," *id.* Marine has now deposed more than a dozen Champlin officials, as well as two of its customers and two officials of its parent corporation. Appellees' Memorandum in Opposition to Appellant's Mo-

well it has been put, "it is not necessary . . . that the party seeking discovery know what facts the other party's experts have discovered and what opinions they have formed. His burden is to show circumstances such that he cannot get any facts or opinions on the subject in which he is interested." [24] That standard Marine has not met.[25]

The petition for rehearing is
*Denied.*

tion to Supplement the Record on Appeal at 3–4. Marine harps on the obstacles to "Owens related documents and testimony," text *supra* at note 10, but affords us no explanation as to why, with factual discovery so extensive, it cannot engage one or more experts of its own to express opinions on "the same subject" that Owens might have.

**24.** 8 C. Wright & A. Miller, Federal Practice § 2032 at 256 (1970).

**25.** The court in which the principal litigation is ongoing apparently agrees. In our earlier opinion we remarked "that [this] court [had] already afforded Marine an opportunity to solicit and submit a finding by the District Court for the Eastern District of Missouri that it [was] 'impracticable for [Marine] to obtain facts or opinions on the same subject by other means,' and that there [had] been no response to that invitation." Op., text at n.56 (footnote omitted). Our reference was to an order, eight months previous to oral argument, deferring action on Marine's motion to accelerate the argument date pending submission of a finding of that sort. *Marine Petroleum Co. v. Champlin Petroleum Co.*, No. 77–1345 (D.C.Cir. June 23, 1977). Shortly after entry of our order, Marine moved the District Court for the Eastern District of Missouri for such a finding, and the court considered the motion at an in–chambers conference but declined Marine's request. Appellant's Petition for Rehearing at 8–9 n.9.