HEXION SPECIALTY CHEMICALS, INC.; Nimbus Merger Sub Inc.; Apollo Investment Fund IV, L.P.; Apollo Overseas Partners IV, L.P.; Apollo Advisors IV, L.P.; Apollo Management IV, L.P.; Apollo Investment Fun V, L.P.; Apollo Overseas Partners V, L.P.; Apollo Netherlands Partners V(A), L.P.; Apollo Netherlands Partners V(B), L.P.; Apollo German Partners V Gmbh & Co. KG; Apollo Advisors V, L.P.; Apollo Management V, L.P.; Apollo Investment Fund VI, L.P.; Apollo Overseas Partners VI, L.P.; Apollo Overseas Partners (Delaware) VI, L.P.; Apollo Overseas Partners (Delaware 892) VI, L.P.; Apollo Overseas Partners (Germany) VI, L.P.; Apollo Advisors VI, L.P.; Apollo Management VI, L.P.; Apollo Management, L.P.; and Apollo Global Management, LLC, Plaintiffs/Counterclaim Defendants,

v.

HUNTSMAN CORP., Defendant/Counterclaim Plaintiff.

C.A. No. 3841–VCL.

Court of Chancery of Delaware.

Submitted: Aug. 19, 2008.
Decided: Aug. 22, 2008.

Donald J. Wolfe, Jr., Esquire, Stephen C. Norman, Esquire, Kevin R. Shannon, Esquire, Bradley W. Voss, Esquire, Abigail M. LeGrow, Esquire, Berton W. Ashman, Jr., Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware; Peter C. Hein, Esquire, Marc Wolinsky, Esquire, Jeffrey C. Fourmaux, Esquire, Stephen R. DiPrima, Esquire, Graham W. Meli, Esquire, Wachtell, Lipton, Rosen & Katz, New York, New York, Attorneys for Plaintiffs/ Counterclaim Defendants.

Bruce L. Silverstein, Esquire, Rolin P. Bissell, Esquire, Danielle Gibbs, Esquire, Christian Douglas Wright, Esquire, Kristen Salvatore DePalma, Esquire, Tammy L. Mercer, Esquire, Richard J. Thomas, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware; Harry M. Reasoner, Esquire, David T. Harvin, Esquire, James A. Reeder, Jr., Esquire, N. Scott Fletcher, Esquire, Michael C. Holms, Esquire, Vinson & Elkins, L.L.P., Houston, Texas, Attorneys for Defendant/Counterclaim Plaintiff.

### *OPINION*

LAMB, Vice Chancellor.

The plaintiff, Hexion Specialty Chemicals, Inc., has filed two motions to compel discovery primarily covering documents prepared by or relating to the activities of defendant Huntsman Corp.'s financial advisor. The parties' briefs and oral arguments focused on the availability of Court of Chancery Rule 26(b)(4)(B)[1] or the work product doctrine to shield these documents from production.[2] For the reasons discussed in this opinion, the court concludes that Huntsman's investment banker cannot properly be regarded as a litigation or trial consultant within the meaning of Rule

---

1. Ct. Ch. R. 26(b)(4)(B) states:

   A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

2. Other issues raised in Hexion's August 1, 2008 and August 6, 2008 motions to compel were addressed by the court at the August 19, 2008 hearing.

26(b)(4)(B), and further concludes that the documents presented to the court for review do not fall within the ambit of attorney work product. Thus, to the extent described, the motions to compel will be granted.

### I.

#### A. *Background*

Huntsman hired Merrill Lynch, Pierce, Fenner & Smith, Inc. to serve as its financial advisor pursuant to an October 10, 2005 engagement letter. Acting pursuant to that engagement, Merrill Lynch advised Huntsman in connection with the negotiation and signing of a July 12, 2007 merger agreement with Hexion. Merrill Lynch continues to serve as Huntsman's financial advisor pursuant to that engagement. On June 18, 2008, Hexion filed suit in this court against Huntsman claiming, among other things, that the merger agreement with Huntsman cannot be closed because Hexion's financing sources cannot be provided with a satisfactory solvency opinion and Huntsman has suffered a Material Adverse Effect under the agreement.

Huntsman sent a one-page letter, dated June 24, 2008, to Merrill Lynch stating that, in addition to its role as the company's financial advisor, Merrill Lynch had, on June 18, 2008, agreed to serve as Huntsman's litigation consultant in connection with the Hexion litigation. Merrill Lynch did not form separate and distinct financial advisory and litigation consulting teams. Instead, the same Merrill Lynch group who had been performing financial advisory services for Huntsman added litigation advisory services to their duties. Consequently, as at least one Merrill Lynch witness candidly testified, the demarcation between Merrill Lynch's role as financial advisor and its role as litigation consultant is unclear.[3]

Other than a few heavily redacted board meeting minutes, it appears that Huntsman has not produced any documents related to work performed by Merrill Lynch, in either of its roles, after June 18, 2008, claiming protection as a litigation consultant under Rule 26(b)(4)(B), the work product doctrine, and other theories. Merrill Lynch withheld similar categories of documents from its document subpoena response.

#### B. *The Dispute*

In its motions to compel, Hexion asserts that Rule 26(b)(4)(B) and the work product doctrine are at most applicable to Merrill Lynch's role as a non-testifying litigation consultant and do not prevent discovery of matters related to Merrill Lynch's continuing role as Huntsman's investment banker. Hexion claims Merrill Lynch, in its role as an financial advisor on the deal, is a key fact witness and that Huntsman is using the facade of litigation consulting as an excuse to withhold discoverable documents prepared by or relating to Merrill Lynch's continuing activities in that role. Furthermore, Hexion contends that the failure to separate Merrill Lynch's dual roles should result in the loss of the protections provid-

---

**3.** Andrew Martin, a Merrill Lynch witness, admitted to having trouble differentiating between Merrill Lynch's dual roles. During his August 14, 2008 deposition, in response to a question regarding how he distinguishes between whether work is done by Merrill Lynch in its role as financial advisor or in its role as litigation consultant, Martin stated, "[t]hat's a tough question to answer.... We are not nec-essarily fully apprised of why questions are being asked." Martin Dep. 10–11. Martin commented that he sometimes resolved the ambiguity by assuming Merrill Lynch was acting in its role as litigation consultant, even when the questions came from Merrill Lynch's investor relations and business development personnel. Martin Dep. 11.

ed by both Rule 26(b)(4)(B) and the work product doctrine, and result in the production of the otherwise legitimately discoverable materials.

Huntsman opposes Hexion's motions to compel on the grounds that the material sought is protected by (1) Rule 26(b)(4)(B) (because Merrill Lynch has acted as a non-testifying expert "retained or specially employed ... in anticipation of litigation or preparation for trial"),[4] (2) the work-product doctrine, (3) the attorney-client privilege, and/or (4) the business strategy immunity. In support of its argument that Merrill Lynch should be protected as a non-testifying litigation consultant, Huntsman cites cases where federal courts have allowed individuals to wear two hats—that of an ordinary witness not protected by Rule 26(b)(4)(B) and that of a non-testifying litigation consultant protected under the Rule.[5] Huntsman then attempts to distinguish cases cited by Hexion that involve testifying experts on the grounds that Huntsman does not intend to call Merrill Lynch to testify in any capacity.

## II.

A. *Court Of Chancery Rule 26(b)(4)(B): Non–Testifying Experts*

■ Under Rule 26(b)(4)(B), facts or opinions held by Merrill Lynch if it were acting solely as a non-testifying expert retained by Huntsman "in anticipation of litigation or preparation for trial" would be discoverable *only* "as provided in Rule 35(b)" (which is not applicable here) or "upon a showing of exceptional circum-

stances" (which neither party has argued exists here). At the same time, if Merrill Lynch were acting solely as Huntsman's financial advisor, it would be subject to broad discovery under Rule 26(b)(1) in its role as a fact witness and could not be protected by Rule 26(b)(4)(B). The advisory note to Rule 26(b)(4)(B)'s federal counterpart states that:

> [T]he subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.[6]

The situation here is exactly the scenario the advisory note contemplates. As such, Rule 26(b)(4)(B) does not apply to Merrill Lynch in its role as Huntsman's financial advisor because in that role Merrill Lynch has acquired and continues to acquire information as an "actor" in or "viewer" of the Hexion transaction, which lies at the heart of this lawsuit.

Huntsman argues that Merrill Lynch was the obvious choice for its litigation consultant because it was familiar with the company, understood the deal, and could quickly provide the requested advice. While these observations may be true, they are irrelevant. Huntsman had sufficient time to engage an independent financial advisor as a litigation consultant. More important, if Huntsman was actually interested in having Merrill Lynch provide

---

4. Ct. Ch. R. 26(b)(4)(B).

5. *See Marine Petroleum Co. v. Champlin Petroleum Co.,* 641 F.2d 984, 989 (D.C.Cir.1979) (holding that an independent consultant on energy matters may be treated as both an ordinary witness and a price-setting expert obtained in preparation for litigation); *Essex Builders Group v. Amerisure Ins. Co.,* 235

F.R.D. 703, 705 (M.D.Fla.2006) (holding that a financial advisor to a party may be treated as both an ordinary witness and a litigation consultant).

6. Fed.R.Civ.P. 26(b)(4)(B) advisory committee's note (1970).

litigation services to its attorneys (instead of cloaking its financial services from discovery), Huntsman had both the time and the occasion to ask Merrill Lynch to form a separate team of litigation consultants. Had that happened, Merrill Lynch might then have maintained adequate internal controls to prevent the fact witnesses serving on the investment banking team from gaining knowledge of the litigation consultant team's work. In that case, Huntsman might have gained the protections of Rule 26(b)(4)(B) for the work of those litigation consultants.

Case law under Federal Rule of Civil Procedure 26(b)(4)(B) recognizes the concept that the same company (or even the same person) may serve dual roles for the purpose of discovery and litigation if the line between those roles is clearly drawn.[7] Nevertheless, the persuasive authority cited by Huntsman in support of its position that the same party may maintain dual roles is clearly distinguishable. In each of those cases, unlike the present situation, a definite line could be drawn separating the roles.[8] Additionally, much of this same case law acknowledges the worrisome possibility that parties "may utilize the dual purpose rationale to cloak legitimate witnesses." [9]

This court recently faced an analogous situation in *In re Chaparral Resources, Inc. Shareholders Litigation*,[10] where the plaintiffs hired a natural resource evaluation firm to perform the dual roles of litigation consultant and testifying expert. In *Chaparral*, the consulting firm formed two teams and purported to maintain some degree of separation between them to shield its litigation consulting work product.[11] However, because the record showed that there was substantial sharing of information between the teams, this court held that the work of both teams would be treated under the expert witness standard for the purposes of expert discovery.[12]

*Chaparral* provides authority to refuse application of Rule 26(b)(4)(B) in any case where a single firm that is asked to perform dual roles fails to maintain an adequate separation of functions. The present case raises an additional ground to deny the application of that rule because the proponent (Huntsman) is trying to use the rule to shield testimony by a natural fact witness. As is discussed below, it is plain that Merrill Lynch has continued to perform financial advisory services, including giving advice to the Huntsman board, during the period since the litigation was filed. Huntsman should not be able to throw a cloak of secrecy over Merrill Lynch's advisory activities by the simple expediency of purporting to hire the same team of Merrill Lynch employees as its counsel's so-called litigation consultants. If Huntsman or its lawyers needed someone to consult with, there were many other good options that would not have prevented discovery into the continuing activities of Huntsman's financial advisors.

For all the foregoing reasons, and due to Huntsman's failure to make any meaningful effort to distinguish between Merrill

---

7. *See, e.g., Essex,* 235 F.R.D. at 705.

8. *See id.; Marine,* 641 F.2d at 992–93; *In re Painted Aluminum Prods. Antitrust Litig.,* 1996 WL 397472, at *2, n. 2 (E.D.Pa. July 9, 1996).

9. *In re Painted Aluminum,* 1996 WL 397472, at *2, n. 2; *see also Essex,* 235 F.R.D. at 704; *Marine,* 641 F.2d at 992.

10. 2007 WL 2998967 (Del.Ch. Oct. 11, 2007).

11. *Id.* at *1.

12. *Id.* at *3.

Lynch's dual roles, this court will not recognize Merrill Lynch as a non-testifying litigation consultant under Rule 26(b)(4)(B).

### B. *Work Product Doctrine*

Next, Huntsman argues that the documents and information sought by Hexion are protected by Court of Chancery Rule 26(b)(3), which codifies the work product doctrine. Rule 26(b)(3) provides that:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under paragraph (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

In *Pfizer v. Advanced Monobloc Corp.*, a Superior Court of Delaware case upon which both parties rely, the court stated that the right question to ask when determining whether the work product doctrine applies is: "[u]nder the totality of the circumstances, why was the document prepared?"[13] The court in *Pfizer* chose to apply the "because of" test over the more conservative "primary purpose" test and attempted to determine whether the document would have been produced but for the anticipated litigation.[14]

Huntsman argues that Merrill Lynch would have had no reason to create its post June 18, 2008 work product in the absence of pending or anticipated litigation. To fully evaluate this argument, the court asked Huntsman to submit for *in camera* inspection unredacted minutes of the Huntsman board meetings held at the end of June and the beginning of July, along with copies of Merrill Lynch's presentations made at those meetings and notes of the persons who drafted the minutes. The court has reviewed those materials, along with the affidavits Huntsman submitted in opposition to the motions.

The portions of the minutes related to presentations by Merrill Lynch personnel and the corresponding materials consist of business, not legal, advice. The presentations are similar to presentations one would expect from a company's financial advisors in the context of a disputed merger agreement. While some of those presentations address questions raised by the outbreak of litigation, the advice relates to business issues rather than to the conduct or defense of litigation. In sum, it is plain from the materials Merrill Lynch used at the board meetings in question that its advice was given in its capacity as financial advisor. Other than a tag line in the minutes themselves, there is nothing in the documents (including the handwritten notes of the meetings) to indicate that Merrill Lynch was acting in any other capacity. Thus, the claim of work product protection fails as it relates to these documents.

### C. *Attorney–Client Privilege And Business Strategy Immunity*

In a sweeping, generalized manner, Huntsman also claims that information sought by the motions to compel is protected under the attorney-client privilege and business strategy immunity. With respect to documents not yet identified on a privilege log, it is impossible to evaluate

---

**13.** 1999 WL 743868, at *5 (Del.Super. Sept. 20, 1999).

**14.** *See id.* at *4–5.

these arguments.[15] Therefore, the court will confine its analysis, at this time, to the materials submitted for *in camera* review—the unredacted minutes from Huntsman's June 26, 2008 and July 1, 2008 board meetings and materials used by Merrill Lynch in its presentations to Huntsman's board of directors.[16]

■ While there is attorney-client privileged information in the minutes, it is not found in any of the portions of the minutes that deal with Merrill Lynch. Turning to the second ground argued, the business strategy immunity has been invoked by this court to prevent discovery "where the information disclosed may not be used for proper legal purposes, but rather for practical business advantages."[17] Huntsman argues that the information sought could be used by Hexion to renegotiate the transaction. This may be true; however, almost any piece of relevant discovery could be used to renegotiate the deal and that fact, standing alone, will not prevent discovery. While, Merrill Lynch may have created other documents protected by the business strategy immunity, such as evaluations of alternative transactions with third parties, the materials presented to the court for *in camera* review do not fall within that category.

### III.

For the foregoing reasons, Hexion's motions to compel are GRANTED, specifically as set forth below.

Huntsman and Merrill Lynch's defense under Rule 26(b)(4)(B) will be entirely disregarded for the purposes of the motions to compel. Huntsman and Merrill Lynch's defense under the work product doctrine is denied as to the materials provided to the court for its *in camera* review.

Today, Huntsman and Merrill Lynch are directed to provide Hexion with all materials related to Merrill Lynch's involvement in the June 26, 2008 and July 1, 2008 board meetings, including: (1) the Merrill Lynch presentation documents and (2) meeting minutes unredacted to show sections covering discussions by Merrill Lynch personnel. In addition, no later than August 27, 2008, Huntsman and Merrill Lynch are directed to provide Hexion with (1) a privilege log detailing the documents responsive to the motions to compel that were withheld on business strategy, attorney-client privilege, and other grounds, and (2) any documents responsive to the motions to compel that are not covered in the privilege log.

IT IS SO ORDERED.

**15.** As of the August 19, 2008 oral arguments on these motions, neither Huntsman nor Merrill Lynch had provided a privilege log addressing the documents at issue, claiming in a general manner that all materials created after June 18, 2008 are protected for one or more reasons.

**16.** The court also requested the attorney notes from the two board meetings to aid in analysis of the board minutes.

**17.** *NiSource Capital Mkts., Inc. v. Columbia Energy Group*, 1999 WL 959183, at *3, 1999 Del.Ch. LEXIS 198, at *7 (Del.Ch. Sept. 24, 1999).